**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathlene Leemarie Swanson, | No. CV-23-02129-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Kathlene Leemarie Swanson seeks review of the Social Security Commissioner's final decision denying her disability insurance benefits. Because the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence and is not based on harmful legal error, it is affirmed.

## I.    Background

Swanson filed an application for disability insurance benefits on April 7, 2020, alleging a disability beginning March 13, 2020. (Administrative Record ("AR") 16.) The claim was denied initially and upon reconsideration. (AR 16.) After a hearing, an ALJ denied her claim on September 22, 2022. (AR 16, 44.) The Appeals Council denied Swanson's request for review (AR 1), and she then appealed to this court.

## II.    Legal Standard

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a

preponderance" and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.    Discussion

Swanson argues the ALJ committed two materially-harmful legal errors in analyzing her claim: (1) finding the medical opinions of Dr. Maninder Kahlon and his physician assistant Sharon Mertins unpersuasive; and (2) rejecting Swanson's symptom testimony without adequate justification. Swanson seeks a remand for a calculation of benefits or in the alternative for further administrative proceedings.

### A.  The ALJ's Five-Step Disability Evaluation Process

Under the Social Security Act, a claimant for disability insurance benefits must establish disability prior to the date last insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. A claimant is disabled under the Act if she cannot engage in substantial gainful activity because of a medically-determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

Whether a claimant is disabled is determined by a five-step sequential process. *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step three, the claimant must show that her impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If not, at step four, the claimant must show her residual functional capacity ("RFC")—the most she can do with her impairments—precludes her from performing her past work. *Id.* If the claimant meets her burden at step four, then at step five the Commissioner must determine if the claimant

is able to perform other work that "exists in significant numbers in the national economy" given the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

The ALJ found Swanson had "not engaged in substantial gainful activity" since her disability onset date and that she had a severe impairment for a continuous period of twelve months, satisfying her burden at step one and two.[1] *Id.* § 404.1520(a)(4)(i)–(ii). (AR 21.) At step three, the ALJ determined Swanson's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment, and at step four that Swanson had the RFC to perform light work with some additional limitations. (AR 23, 28.) In evaluating Swanson's RFC, the ALJ considered her entire medical record but discounted Dr. Kahlon's and PA Mertins's medical opinions.[2] (AR 41–42.) The ALJ also discounted Swanson's symptom testimony because it was "not entirely consistent with the medical evidence[.]" (AR 29.)

The ALJ used Swanson's RFC to conclude at step four that she was unable to perform any of her past relevant work. (AR 42.) But at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Swanson] can perform," so she was not disabled. (AR 43.)

**B. The ALJ's Evaluation of Dr. Kahlon's and Mertins's Medical Opinions[3]**

Swanson contends the ALJ erred in discounting the medical opinions of Dr. Kahlon and PA Mertins by wrongly discounting their opinions that Swanson could not work an eight-hour day and by cherry-picking Dr. Khalon's medical records in finding they did not support his opinion. (Doc. 15 at 12–16.)

---

[1] The ALJ found Swanson had the following severe impairments: obesity; migraines; cervical, thoracic, and lumbar degenerative disc disease; degenerative joint disease of the left shoulder; fibromyalgia; carpal tunnel syndrome, idiopathic neuropathy; chronic bronchitis/chronic obstructive pulmonary disease; bipolar I disorder; anxiety disorder; and a personality disorder. (AR 21.)

[2] The ALJ found other medical opinions "generally persuasive," "not persuasive," or only "somewhat" persuasive (AR 37–40), but Swanson challenges only the ALJ's findings related to Dr. Kahlon and PA Mertins.

[3] The ALJ's analysis of Dr. Kahlon's and PA Mertins's medical opinions will largely be addressed together because Swanson generally challenges them on the same grounds and referenced her arguments regarding Dr. Kahlon's opinion when addressing PA Mertins's opinion. (*See* Doc. 15 at 15–16.)

Dr. Kahlon completed a checkbox form indicating Swanson's impairments precluded an eight-hour workday. (AR 1491.) The ALJ determined this finding was "in essence, a statement of disability" and therefore "inherently neither valuable nor persuasive" because such determinations are reserved for the Commissioner. (AR 41.) The ALJ applied the same rationale to PA Mertins's similar checkbox form finding Swanson's impairments precluded her from working an eight-hour day. (AR 42 (citing AR 1924–25).)

As the Commissioner notes, statements on issues reserved to the Commissioner are "inherently neither valuable nor persuasive," which means an ALJ need "not provide any analysis about how [they] considered such evidence." *See* 20 C.F.R. § 416.920(c). A statement that a claimant is unable to work is such an issue. *See id.* § 416.920(c)(3)(i); *see also O'Brien v. Kijakazi*, No. 22-35285, 2023 WL 3735582, at *1 (9th Cir. May 31, 2023) ("The determination of whether a claimant can work is reserved to the Commissioner."). It was therefore not legal error for the ALJ to discount Dr. Kahlon's and PA Mertins's findings that Swanson's impairments precluded her from an eight-hour workday.

Additionally, Dr. Kahlon's and PA Mertins's opinions were rendered on checkbox forms without additional explanations, making them less persuasive. *See Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("[W]e have accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation"); *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions"). The ALJ explicitly noted PA Mertins's opinion was provided on a checkbox form (*see* AR 42) but did not do so for Dr. Kahlon's opinion (AR 41). For both, the ALJ determined that the opinions on the checkbox forms were not consistent with the providers' treatment notes. (AR 41–42.) The Commissioner argues that checkbox forms with no supporting explanations are less persuasive. (Doc. 19 at 7.) Although the Commissioner cannot provide new grounds for an ALJ's opinion, he can provide additional support for the ALJ's position—here, that the opinions were unpersuasive. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006); *see also Harris v. Comm'r of Soc. Sec. Admin.*, No. CV-16-

1    01994-PHX-GMS, 2017 WL 2060418, at *5 n.6 (D. Ariz. May 15, 2017) (noting

2    Commissioner's introduction of a questionnaire on which the ALJ did not rely presented

3    additional support for discounting a medical opinion).

4         Swanson cites a case from this court acknowledging an ALJ "may permissibly reject

5    [unexplained] check-off reports" but "cannot refute that assessment due to lack of an

6    explanation" when the "provider's treatment notes support his opinion[.]" *Moreno v.*

7    *Comm'r of Soc. Sec. Admin.*, No. CV-22-00319-PHX-DLR, 2023 WL 4926258, at *3 (D.

8    Ariz. Aug. 2, 2023). But Swanson has not shown Dr. Kahlon's or PA Mertins's checkbox

9    form opinions stating she is severely limited by her impairments were supported by their

10   treatment notes. (*See* Docs. 15, 20.) Contrary to Swanson's arguments, the ALJ provided

11   a detailed analysis supported by substantial evidence—far more than the "mere scintilla"

12   required, *Orn*, 495 F.3d at 630—to find the opinions unpersuasive. (*See* AR 41–42.) The

13   ALJ did not err by discounting either medical opinion on this ground.

14        Swanson also argues the ALJ cherry-picked medical records to find Dr. Khalon's

15   opinions unpersuasive. (Doc. 15 at 13, 16.) An ALJ is "not permitted to 'cherry pick' from

16   [ ] mixed results to support a denial of benefits" but rather must "consider examples of a

17   broader development." *Attmore v. Colvin*, 827 F.3d 872, 877–78 (9th Cir. 2016)

18   (simplified). An ALJ cherry-picks when she highlights improvements that are not sustained

19   over time or not reflective of broader trends. *Id.*

20        Swanson's main argument in support of cherry-picking is that the ALJ

21   "mischaracterized the record" when referring to her 2021 electromyography ("EMG")

22   studies. (Doc. 15 at 13.) Swanson is correct. As evidence that Dr. Kahlon's "extreme

23   limitations" were "not supported by his treatment notes," the ALJ said "the suspected

24   cervical and lumbar radiculopathy did not correlate with imaging." (AR 41.) But the ALJ

25   cited EMG results confirming Swanson suffered from cervical and lumbar radiculopathy.

26   (*See* AR 41 (citing AR 1130, 1132, 1145, 1147).) The ALJ therefore erred by relying on

27   the EMG studies to discount Dr. Kahlon's medical opinion.

28        But as previously stated, the ALJ otherwise provided a detailed analysis showing

that the extreme limitations Dr. Kahlon imposed in his checkbox form were not supported by his treatment notes. (*See* AR 41.) For example, Dr. Kahlon's medical records often demonstrated normal findings inconsistent with such severe limitations. (*See, e.g.*, AR 1124–25, 1127, 1138–39.) The ALJ therefore did not err by discounting Dr. Khalon's medical opinion even though she improperly relied on the EMG studies as an inconsistency between his opinion and the medical evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion.") (citation and quotations omitted); *see also Hiddessen v. Comm'r of Soc. Sec. Admin.*, No. CV-22-01883-PHX-MTL, 2023 WL 5767840, at *6 (D. Ariz. Sept. 7, 2023) (holding ALJ's incorrect characterization of the medical record was harmless because "the ALJ's overall conclusion that [the provider's] opinion is unpersuasive is still supported by substantial evidence").

## C. The ALJ's Evaluation of Swanson's Symptom Testimony

When a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to cause the severity of the symptoms alleged and there is no evidence of malingering, an ALJ may only reject subjective symptom-severity testimony by offering "specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). Such findings are sufficiently specific when they permit a reviewing court to conclude the ALJ "did not arbitrarily discredit [a] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (simplified), *superseded on other grounds by* 20 C.F.R § 404.1502(a). The ALJ did not find that Swanson was malingering.[4] So, the ALJ could only discredit her symptom testimony by

---

[4] Despite not finding Swanson malingering, the ALJ highlighted inconsistencies in her testimony during the hearing. (*See* AR 61–62 (noting that while Swanson claimed to have headaches after a Botox injection, medical records indicated the injection helped her migraines and did not list headaches as a side effect); 63 (citing medical records that contradicted Swanson's testimony about neuropathy affecting her coordination and balance); 66–67 (pointing out Swanson "never use[s] a walker" at medical appointments despite testifying that she needs one and contradicting her testimony that she uses a dog stroller as a walker based on treatment notes).)

providing "specific, clear and convincing" reasons for doing so. *Revels*, 874 F.3d at 655.

The ALJ discounted Swanson's symptom testimony based on: (1) inconsistencies with the medical record; (2) improvement of her symptoms with treatment; and (3) inconsistencies with her daily activities. (*See* AR 29–36.) Swanson acknowledges the ALJ provided a long, detailed summary of medical evidence in support of the RFC and the decision to discount Swanson's symptom testimony, but nonetheless attempts to poke holes in some of those rationales. (*See, e.g.*, Doc. 15 at 19–21.) Even if these arguments succeeded, though, they would be insufficient to support finding the ALJ erred in relying on inconsistencies between Swanson's testimony and the medical record to discount her symptom testimony because that conclusion is otherwise supported by substantial evidence. *See Pickett v. King*, No. 23-16192, 2024 WL 5398771, at *1 (9th Cir. Feb. 10, 2025) (noting an insufficient basis for rejecting symptom testimony "does not warrant reversal because the ALJ's other reasons and ultimate credibility determination are still supported by substantial evidence.").

For example, Swanson argues the ALJ did not adequately support finding her migraines did not warrant greater limitations. (Doc. 15 at 20.) The ALJ, however, cited to ample evidence supporting her finding that Swanson's migraines were not as limiting as she claimed in her testimony. (*See* AR 31 (citing AR 1124–25 (noting Swanson stated she only has three bad migraines a month and was "alert, oriented, answering questions, conversing."); 1505 (noting Swanson denied having headaches within the last fourteen days); 1659 (noting Swanson was "in no acute distress")).) The ALJ even noted that "contrary to [Swanson's] testimony that Botox worsened her headaches,[5] her treaters documented that she reported relief with Botox therapy." (AR 31 (citing AR 1903 (Swanson "continues to receive therapy benefit from Botox therapy even after on her first round."))).) These are only a fraction of the "specific, clear, and convincing reasons" the ALJ provided for discounting Swanson's symptom testimony based on its inconsistencies

---

[5] Swanson testified she did not go back for more Botox injections because of a serious headache she had after an injection. (AR 61–62.) The ALJ asked Swanson why this side effect was not noted in her medical records and Swanson said she did not know why. (AR 63.)

with the medical record. (*See* AR 29–36.) Swanson's arguments contending the ALJ erred in this respect fail.

Swanson is correct that the ALJ erred by relying on her improvement with treatment and daily activities to discount her symptom testimony, but these errors were harmless. The effectiveness of treatment can be considered when weighing a claimant's allegations. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv); 404.1529(c)(4); 416.929(c)(3)(iv); 416.929(c)(4); SSR 16-3p, available at 2017 WL 5180304, at *8. "But to reject a claimant's testimony, it is not enough for the ALJ to show that the pain was responsive to treatment; the ALJ must show that the pain was 'controlled,' i.e., no longer debilitating." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) (quoting *Warre*, 439 F.3d at 1006). The ALJ did not do so here. Nowhere in the ALJ's decision does she state Swanson's migraines were controlled rather than merely responsive to treatment—which, contrary to the Commissioner's suggestion (Doc. 19 at 19–20), is the standard. (*See, e.g.*, AR 31 ("her treaters documented that she reported relief with Botox therapy."); 31 (citing AR 837 (Swanson "feels that [medicine] has been helping but still having headache intermittently.")).) The only evidence the ALJ cites supporting a finding that Swanson's headaches were controlled is one medical record indicating that Swanson denied having headaches, among many other ailments, for the past fourteen days. (AR 31 (citing AR 1505).) Because the ALJ did not find Swanson's migraine symptoms were controlled, she erred in considering the effectiveness of treatment to discount Swanson's symptom testimony.

As evidence to discount Swanson's symptom testimony, the ALJ also mentioned she was "taking her dog on daily walks into early 2021." (AR 33 (citing AR 1165).) Contradictions between a claimant's symptom testimony and her daily activities provide a valid ground for discounting that testimony. *See Molina*, 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). But in considering daily activities to discount a claimant's symptom testimony, the ALJ must conduct a

"transferability" and "substantiality" analysis. That analysis requires an ALJ to consider whether a claimant can spend a "*substantial* part" of her day "engaged in pursuits involving the performance of physical functions that are *transferable* to a work setting." *Id.* (citation omitted) (emphases added).

Swanson argues the ALJ failed to conduct the required substantiality and transferability analysis before discounting her symptom testimony based on her daily dog-walking. (Doc. 15 at 22.) Indeed, it does not appear the ALJ conducted that analysis. (*See* AR 33–34.) The Commissioner summarily argues it was "reasonable" for the ALJ to conclude Swanson walking her dog meant she "was not as limited as she claimed[,]" but does not contend the ALJ conducted the required substantiality and transferability analysis and so conceded the issue. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that failure to respond to an argument in an opposition brief may constitute a concession of the argument). The ALJ therefore erred in using Swanson's daily walks with her dog as a reason to discount her symptom testimony.

These two errors were harmless, though, because even if the ALJ had not considered Swanson's dog-walking or the effectiveness of her migraine treatment, her analysis of the inconsistencies between the objective medical evidence and Swanson's symptom testimony still provided "specific, clear, and convincing reasons" to discredit her testimony, meaning the errors were "inconsequential to the ultimate nondisability determination" and therefore harmless. *Revels*, 874 F.3d at 655; *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (simplified); *see also Pickett*, 2024 WL 5398771, at *1. Additionally, "[e]ven if an ALJ errs in discounting subjective symptom testimony, that error alone will not warrant reversal if the ALJ's overall conclusion is still supported by substantial evidence." *J.S. v. Kijakazi*, No. 22-35602, 2023 WL 4200020, at *1 (9th Cir. June 27, 2023) (*citing Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

The ALJ's decision to discount Swanson's symptom testimony is supported by

substantial evidence, including that "despite her reports of constant, intractable, high-level pain, providers generally observed that she appeared in no acute distress." (AR 34 (citing AR 938, 1005, 1940).) The ALJ also found Swanson's "respiratory impairment and its effects are not as intense, persistent, or limiting as she alleges" (AR 31–32), citing a multitude of different medical records to support this conclusion such as imaging showing a clear chest, medical records consistently documenting normal respiratory function, normal oxygen saturation levels, unremarkable emergency room exams, Swanson's denial of symptoms, and her persistence in smoking despite medical advice to quit. (AR 31; *see, e.g.*, AR 789, 938, 1153, 1505, 1751.) These medical records provide substantial evidence for the ALJ's conclusion that Swanson's impairments were not as intense, persistent, or limiting as she alleges, supporting discounting Swanson's symptom testimony.

**IV.    Conclusion**

Swanson's contention that the ALJ erred in discounting the medical opinions of Dr. Kahlon and PA Mertins fails. Although the ALJ erroneously relied on Swanson's treatment response with respect to migraines and daily activities to discount her symptom testimony, these errors were harmless because the ALJ otherwise provided specific, clear, and convincing reasons for discounting it based on inconsistencies between Swanson's testimony and the medical record.

**IT IS ORDERED** affirming the September 22, 2022, decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 27th day of February, 2025.

Honorable Krissa M. Lanham
United States District Judge